UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKOLAOS KATSAROS,<br><br>          Plaintiff,<br><br>   – v. –<br><br>ZANIMAD FOOD CORP. D/B/A 3 GUYS RESTAURANT,<br>SPIROS ARGIROS, SPYRODOULA BELLAS,<br><br>         Defendants. | 20-cv- _____<br><br><br>**COMPLAINT** |

Plaintiff Nikolaos Katsaros ("Katsaros") by his attorneys, Cary Kane LLP, complains of Defendants as follows:

**<u>NATURE OF THIS ACTION</u>**

1.      This case concerns the brazen wage theft by Defendants over the course of Katsaros's employment as a server at 3 Guys Restaurant ("Restaurant"), a diner on Madison Avenue in Manhattan. Defendants routinely issued paychecks to Katsaros with $0.00 in wages by deducting the entirety of any tips Katsaros earned in a week from his wage earnings in addition to tax withholdings, resulting in net pay of $0.00. Defendants also failed to pay Katsaros overtime pay for all hours worked over 40 in a week. In addition, Defendants forced Katsaros to pay a daily kickback to the Defendants from his tips which subsidized Defendants' wages to kitchen staff and Defendants' credit card processing fees.

2.      Katsaros thus brings this action to remedy wage violations under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") for the three year period prior to the filing of this action, and the New York Labor Law, §§ 190 *et seq*., §§

650 *et seq*. ("NYLL") for the six year period prior to the filing of this action ("Relevant Period").

3.      Katsaros seeks declaratory and injunctive relief; his unpaid wages including overtime wages and regular wages; spread of hours pay; disgorgement of illegally retained tips; penalties for notice and record-keeping violations; statutory liquidated damages; pre-judgment interest; his reasonable attorney fees and costs; and all other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over Katsaros's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      The Court has supplemental jurisdiction over Katsaros's NYLL claims pursuant to 42 U.S.C. § 1367(a) and NYLL §§ 198, 663 because those claims form part of the same case and controversy with Katsaros's federal claims.

6.      Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within New York County.

7.      Venue is also proper within this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Zanimad Food Corp. is a New York domestic business corporation that maintains its principal offices in New York County and because upon information and belief all Defendants are residents of the State of New York.

**THE PARTIES**

8.      Plaintiff Nikolaos Katsaros is an individual who resides in Queens County, State of New York.  During the Relevant Period, Katsaros was a non-exempt employee of Defendants.

9.      Defendant Zanimad Food Corp. is a domestic business corporation organized under the laws of New York.

10.     Defendant Zanimad Food Corp. maintains its principal offices at 960 Madison Avenue, New York, New York 10021.

11.     960 Madison Avenue in New York, New York is also the location of the Restaurant.

12.     During the Relevant Period, Zanimad Food Corp. was Katsaros's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

13.     Upon information and belief, Zanimad Food Corp.'s annual revenue far exceeds $500,000.00.

14.     Upon information and belief, Defendant Spiros Argiros ("Argiros") is either the sole owner, or a part owner, of Zanimad Food Corp.

15.     Argiros is the chief executive officer of Zanimad Food Corp.

16.     Upon information and belief, Zanimad Food Corp. is a sophisticated business enterprise and has done business in New York State continuously for many years with Defendant Argiros at its head.

17.     Argiros oversees and manages the Restaurant's operations and business and, upon information and belief, (i) sets the Restaurant's hiring and payroll policies, (ii)

discusses hiring and payroll questions and decisions with managers at the Restaurant, and (iii) has power to direct those decisions.

18.     During the Relevant Period, Argiros was Katsaros's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

19.     Defendant Spyrodoula Bellas ("Bellas") was Katsaros's manager at the Restaurant for the entirety of Katsaros's employment.

20.     Bellas was present at the Restaurant supervising employees 5 or 6 days per week.

21.     Bellas was Argiros's "eyes and ears" and "ran the show" when Argiros was not physically present at the Restaurant.

22.     Bellas had the ability to hire workers at the Restaurant.

23.     Bellas disciplined workers at the Restaurant, including Katsaros.

24.     Bellas set workers' work schedules at the Restaurant, including Katsaros.

25.     Bellas ensured that Katsaros paid kickbacks from his tips to the Defendants, as explained further below.

26.     During the Relevant Period, Bellas was Katsaros's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

## **FACTUAL ALLEGATIONS**

27.     Katsaros was employed by Defendants for about 17 years, starting in August 2002 until he was laid off in March 2020.

28.     Katsaros worked for Defendants as a server in the Restaurant for the entirety of his employment and during the Relevant Period.

29.      Katsaros was one of four full-time servers employed by Defendants during the Relevant Period.

30.      Katsaros did not receive a wage notice required by New York law from the Restaurant at any point during his employment and including the Relevant Period.

31.      The Restaurant had set shifts for workers. There was the 7:00AM to 4:00PM shift, 8:00AM to 5:00PM shift, 11:00AM to 9:00PM shift, and 12:00PM to 10:00PM shift.

32.      From the time Katsaros started work at the Restaurant until January 2019, he worked a consistent schedule. Katsaros worked a shift from 12:00PM to 10:00PM with a 30 minute unpaid break, Monday through Friday, and on Sunday, he worked from 9:00AM to 8:00PM with a 30 minute unpaid break. His regular day off was Saturday. Katsaros was therefore typically scheduled for 61 hours of work each week during this time period not including the breaks.

33.      Starting January 2019 until March 2020, the Restaurant cut Sunday from Katsaros's regular schedule and ended his shift at 9:30PM. Thus, he worked 12:00PM to 9:30PM with a 30 minute unpaid break, Mondays through Fridays and was off Saturdays and Sundays. Katsaros was therefore typically scheduled for 47.5 hours of work each week during this time period, not including the breaks.

34.      The Restaurant did not have a time clock for employees, including Katsaros, to clock in or out at any time during Katsaros's employment and during the Relevant Period.

35.     The Restaurant did not have a written method for employees, including Katsaros, to record their hours during Katsaros's employment and during the Relevant Period.

36.     Upon information and belief, Argiros and/or Restaurant management knew the hours that Katsaros worked each week based on the consistency of Katsaros's schedule.

**Wage Underpayments and Deductions for Earned Tips**

37.     Between December 2014 and January 2019, Katsaros typically worked 57 to 67 hours per week after deducting time for breaks (30 mins/day x 6 days/week).

38.     From January 2019 to March 2020, Katsaros typically worked 45 hours per week after deducting time for breaks (30 mins/day x 5 days/week), up to 53.5 hours per week if covering a shift for another server and after deducting time for breaks (30 mins/day x 6 days/week).

39.     The Restaurant did not pay Katsaros one-and-a-half times his regular hourly rate for all hours worked over 40 in a week during his employment.

40.     Thus, for the period of December 2014 to January 2019, Katsaros was underpaid overtime by at least 17 to 27 hours per week.

41.     For the period of January 2019 to March 2020, Katsaros was underpaid overtime by at least 5 to 13.5 hours per week.

42.     For the time period where Katsaros worked 9:00AM to 8:00PM on Sundays, which was 11 hours, Defendants did not pay Katsaros spread of hours pay required by New York Labor Law regulations.

43.     Upon information and belief, Defendants artificially adjusted Katsaros's tax and other required withholdings from his wages during the Relevant Period.

44.     Defendants also deducted the entirety of Katsaros's tips earned from some or all of his wages during the Relevant Period.

45.     Thus, by artificially adjusting Katsaros's tax and other required withholdings, and deducting the entirety of Katsaros's tips, Katsaros's net pay was either $0.00 or grossly below the amount Katsaros should have been paid.

46.     Defendants therefore routinely underpaid Katsaros, or did not pay Katsaros any wage at all for his work.

47.     For example, for the pay period ending February 19, 2017, Katsaros's paystub shows that he worked 40 hours that week at the rate of $7.50 per hour, for wage earnings of $300.00. The paystub has no entry for overtime hours for the pay period. The paystub also shows Katsaros earned $581.60 in tips and, confusingly, shows "meals" on the earnings side of the ledger in the amount of $14.00. The amount of tax and other required deductions during this pay period equaled the amount of regular wages earned by Katsaros, $300.00. In addition, the Restaurant deducted $581.60 in earned tips, and $14.00 for meals. This left Katsaros with net pay of $75.45 for that pay period. Below is a summary of Katsaros's paystub for this period:

| Earnings | | | | | Deductions | |
|---|---|---|---|---|---|---|
| TP | Hours | Rate | Type | Amount | Type | Amount |
| Reg. | 40 | $7.50 | Regular | $300.00 | FICA | $67.44 |
| | | | Overtime | $0.00 | Federal | $93.27 |
| | | | Tips | $581.60 | State | $38.70 |
| | | | Meals | $14.00 | Local | $24.54 |
| | | | Total Earnings | $895.60 | SU/DI | $0.60 |

|  |  |  |  |  | Tips | $581.60 |
|---|---|---|---|---|---|---|
|  |  |  |  |  | Meals | $14.00 |
|  |  |  |  |  | Total Deductions | $820.15 |
|  |  |  |  |  |  |  |
|  |  |  |  |  | **Net Pay** | **$75.45** |

48.     Defendants did not properly compensate Katsaros for all his hours worked, including overtime, during this pay period.

49.     As another example in 2017, Katsaros paystub shows that, for the pay period ending May 7, 2017, Katsaros worked 40 regular hours at $7.50 per hour, and 3 overtime hours at $13.00 per hour. The total wage earnings were $339.00. The paystub shows Katsaros earned $984.70 in tips and another $14.00 in "meals." Turning to the deductions, the Restaurant deducted required tax and insurance withholdings totaling $339.00, which again, equals Katsaros's wage earnings. In addition, Defendants deducted $984.70 in earned tips, and $14.00 in "meals", leaving Katsaros with net pay of $0.00 for that pay period. Below is a summary of Katsaros's paystub for this period:

| Earnings |  |  |  |  | Deductions |  |
|---|---|---|---|---|---|---|
| TP | Hours | Rate | Type | Amount | Type | Amount |
| Reg. | 40 | $7.50 | Regular | $300.00 | FICA | $101.26 |
| OT | 3 | $13.00 | Overtime | $39.00 | Federal | $128.12 |
|  |  |  | Tips | $984.70 | State | $67.21 |
|  |  |  | Meals | $14.00 | Local | $41.81 |
|  |  |  | Total Earnings | $1,337.70 | SU/DI | $0.60 |
|  |  |  |  |  | Tips | $984.70 |
|  |  |  |  |  | Meals | $14.00 |
|  |  |  |  |  | Total Deductions | $1,337.70 |
|  |  |  |  |  |  |  |
|  |  |  |  |  | **Net Pay** | **$0.00** |

50.    Defendants did not properly compensate Katsaros for all his hours worked, including overtime, during this pay period.

51.    Starting in 2019, Defendants added a line to the "Earnings" ledger of the paystub called "TPMIN." The rate was $5.00 per hour.

52.    For example, for the pay period of February 4, 2019 to February 10, 2019, Defendants paid Katsaros for 40 hours of work at $10.00 per hour, and 40 hours in the "TPMIN" line at $5.00 per hour for a total of $200.00. His tips that week were $824.00 and earned "meals" of $18.00. Yet again, the deductions for required tax and insurance withholdings equaled the amount of Katsaros's regular earnings, $400.00. Defendants also deducted $1,024 in tips (which apparently is the sum of $200.00 from TPMIN and $824.00 in tips) and deducted $18.00 in meals. This left Katsaros with net pay of $0.00 for that week. Below is a summary of Katsaros's paystub for this period:

| Earnings | | | | Taxes | | Deductions | |
|---|---|---|---|---|---|---|---|
| TP | Hours | Rate | Amount | Type | Amount | Descr | Amount |
| Reg. | 40 | $10.00 | $400.00 | FICA | $108.94 | Tips | $1,024.00 |
| Tips | | | $824.00 | Federal | $169.00 | Meals | $18.00 |
| Meals | | | $18.00 | State | $71.03 | | |
| TPMIN | 40 | $5.00 | $200.00 | Local | $48.35 | | |
| | | | | SU/DI | $2.68 | | |
| | | Gross Pay | $1,442.00 | Taxes Subtotal | $400.00 | Deductions Subtotal | $1,060.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | Net Pay | $0.00 | | |

53.    Note that the deductions subtotal on this paystub is incorrect at $1,060.00. The correct amount should be $1,042.00. Thus, the grand total of the deductions is $1,442.00 ($400.00 tax and insurance + $1,042.00 tips, meals). The grand total of the

deductions equals the amount of Katsaros's earnings (wages, TPMIN, tips, and meals) resulting in $0.00 in pay for this pay period.

54.     Defendants did not properly compensate Katsaros for all his hours worked, including overtime, during this pay period.

55.     Defendants also occasionally required workers, including Katsaros, to sign a ledger summarizing the worker's weekly wages. The ledger showed the week ending date, tips earned, gross wages, and net pay. Below is a summary of one such ledger Katsaros signed:

| Name | Week ending | Tips | Gross Wage | Net Pay |
|------|-------------|------|------------|---------|
| Nikolaos Katsaros | 1/1/2017 | $652.31 | $336.00 | $70.38 |
| Nikolaos Katsaros | 1/8/2017 | $1148.10 | $336.00 | $0.00 |
| Nikolaos Katsaros | 1/15/2017 | $730.00 | $300.00 | $16.29 |
| Nikolaos Katsaros | 1/22/2017 | $924.93 | $300.00 | $0.00 |
| Nikolaos Katsaros | 1/29/2017 | $764.40 | $300.00 | $1.67 |
| Nikolaos Katsaros | 2/5/2017 | $935.60 | $300.00 | $0.00 |
| Nikolaos Katsaros | 2/12/2017 | $581.60 | $300.00 | $75.45 |
| Nikolaos Katsaros | 2/19/2017 | $602.86 | $300.00 | $93.36 |
| Nikolaos Katsaros | 2/26/2017 | $713.00 | $300.00 | $23.52 |
| Nikolaos Katsaros | 3/5/2017 | $1,075.00 | $339.00 | $0.00 |
| Nikolaos Katsaros | 3/12/2017 | $936.40 | $300.00 | $0.00 |
| Nikolaos Katsaros | 3/19/2017 | $1,030.71 | $339.00 | $0.00 |

| Nikolaos Katsaros | 3/26/2017 | $744.40 | $300.00 | $10.27 |
|---|---|---|---|---|

56.	The amounts in the above "Net Pay" column did not properly compensate Katsaros under either the FLSA or NYLL for all his hours worked because Katsaros worked between 60 to 70 hours during the above weeks.

**Tips Kicked Back to Defendants**

57.	By way of background, starting in September or October 2011, Argiros told the servers, including Katsaros, in one-on-one meetings that they were making "a ton of money" and the cooks in the kitchen were complaining. Argiros told the servers, including Katsaros, that they had to hand over some of their tips to Defendants to help pay the cooks.

58.	Argiros told Katsaros he had to give 10% of his tips to Defendants.

59.	Argiros told Katsaros that if he didn't like this new arrangement, he could leave.

60.	Katsaros decided to go along with the arrangement and thus paid 10% of his tips to Defendants to subsidize the wages of kitchen cooks.

61.	A couple years later in 2014, Argiros again went to the servers, including Katsaros, to adjust the kickback. Argiros explained that the Restaurant paid a lot of money to credit card companies for credit card processing fees. Argiros told the servers, including Katsaros, that Argiros was adjusting the kickback so that the servers, including Katsaros, had to hand over $50.00 per day to cover these credit card costs and to pay the cooks. This practice went on from 2014 to September or October of 2017. Katsaros complied and paid the required $50.00 per day kickback.

62.     In September or October of 2017, Argiros told the servers, including

Katsaros, that their credit card tips would be reported on their paychecks, and Argiros

therefore reduced the daily kickback to $20.00. The reduction of the kickback also

benefited the busboys. By reducing the kickback to Defendants, this resulted in more tips

available from Katsaros and the other servers to share with the busboys. The busboys also

wanted this change since they benefited from the reduced kickback to Defendants.

Katsaros complied and paid the $20.00 per day kickback.

63.     Katsaros paid the kickbacks in cash to Defendants from his tips.

64.     Upon information and belief, Defendants' violations of the FLSA and

NYLL were willful.

## AS AND FOR A FIRST CLAIM
### (Failure to Pay Overtime Wage – FLSA)

65.     Katsaros repeats and re-alleges the allegations made hereinbefore.

66.     At all relevant times, Defendants failed to pay Plaintiff at the statutorily

required overtime rate of one and one half times his regular rate of pay for all hours

worked over 40 hours in a week, in violation of 29 U.S.C. § 207.

67.     Upon information and belief, said violations are willful within the

meaning of 29 U.S.C. § 255(a).

68.     Plaintiff suffered monetary damages as a result of Defendants' acts and

Defendants are jointly and severally liable for said damages.

## AS AND FOR A SECOND CLAIM
### (Failure to Pay Overtime Wage – NYLL)

69.     Katsaros repeats and re-alleges the allegations made hereinbefore.

70.     At all relevant times, Defendants failed to pay Katsaros the statutorily required overtime wage at one and one half times his regular rate of pay for all hours worked over 40 hours in a week, in violation of NYLL § 652 and N.Y. Comp. Codes, Rules & Regs., tit. 12, § 142-2.2.

71.     Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their actions complied with the law within the meaning of NYLL §§ 198 and 663.

72.     Plaintiff suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally for said damages.

### AS AND FOR A THIRD CLAIM
### (Failure To Provide Wage Notices – NYLL)

73.     Katsaros repeats and re-alleges the allegations made hereinbefore.

74.     Defendants failed to provide Plaintiff with a wage notice as required by NYLL §§ 195(1)(a) and (2) when hired and when the terms and basis of his pay changed and at other required times, and the information required in the wage notices was not set forth on his wage statements at any time.

75.     Under NYLL § 198(1-b), Plaintiff is entitled to recover from Defendants a penalty in the amount of $50 for each week that the violation occurred, not to exceed $5,000, together with costs and reasonable attorney fees.

76.     Defendants are jointly and severally liable for said penalties.

77.     NYLL § 198(2) provides that this remedy may be enforced simultaneously or consecutively with other remedies under Article 6 of the NYLL.

## AS AND FOR A FOURTH CLAIM
### (Failure to Pay Minimum Wage – NYLL)

78.     Katsaros repeats and re-alleges the allegations made hereinbefore.

79.     At all relevant times, Defendants did not pay Katsaros for all hours worked by taking deductions from wages earned, resulting in net pay that did not adequately compensate Katsaros for hours worked in a week less than 40, in violation of NYLL §§ 198(1-a) and 652.

80.     Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their actions complied with the law within the meaning of NYLL §§ 198 and 663.

81.     Katsaros suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

## AS AND FOR A FIFTH CLAIM
### (Failure to Pay Minimum Wage – FLSA)

82.     Katsaros repeats and re-alleges the allegations made hereinbefore.

83.     At all relevant times, Defendants did not pay Katsaros for all hours worked by taking deductions from wages earned, resulting in net pay that did not adequately compensate Katsaros for hours worked in a week less than 40, in violation of FLSA, 29 U.S.C. § 206.

84.     Katsaros suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

## AS AND FOR A FIFTH CLAIM
### (Illegal Tip Retention – FLSA)

85.     Katsaros repeats and re-alleges the allegations made hereinbefore.

86.     Defendants deducted a percentage and a flat amount from Katsaros's tips to subsidize the Defendants' payment of wages to kitchen cooks and credit card processing fees.

87.     A tip is the sole property of the tipped employee regardless whether the employer takes a tip credit.

88.     FLSA prohibits an arrangement between the employer and tipped employee wherein any part of the tup received by the employee becomes the property of the employer.

89.     By retaining a portion of Katsaros's tips to pay kitchen cooks and credit card processing fees, the Defendants unjustly enriched themselves and is prohibited by FLSA, 29 U.S.C. §§ 203(m), 203(t).

## AS AND FOR A SIXTH CLAIM
## (Illegal Tip Retention– NYLL)

90.     Katsaros repeats and re-alleges the allegations made hereinbefore.

91.     Defendants deducted a percentage and a flat amount from Katsaros's tips to subsidize the Defendants' payment of wages to kitchen cooks and credit card processing fees.

92.     Section 196-d of the NYLL prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

93.     By retaining a portion of Katsaros's tips to pay kitchen cooks and credit card processing fees, the Defendants unjustly enriched themselves and is prohibited by the NYLL.

**AS AND FOR A SEVENTH CLAIM**
**(Unlawful Deductions – NYLL)**

94.     Katsaros repeats and re-alleges the allegations made hereinbefore.

95.     Defendants deducted the entirety of Katsaros's earned tips and "meals" from Katsaros's wages, resulting in wage underpayments, or pay of $0.00, in violation of NYLL 193 and 652.

96.     Katsaros suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

**AS AND FOR AN EIGHTH CLAIM**
**(Failure to Pay Spread of Hours – NYLL)**

97.     Katsaros repeated and re-alleges the allegations made hereinbefore.

98.     Defendants failed to pay Katsaros one hour of pay at the applicable New York State minimum wage when Katsaros worked over 10 hours per workday, in violation of N.Y. Comp. Codes, Rules & Regs., tit. 12, § 146-1.6.

99.     Katsaros suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

**JURY DEMAND**

100.    Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

**WHEREAS** no previous application for relief has been made for the relief requested herein, Plaintiff respectfully requests that this Court enter a judgment:

        (a)     declaring that the acts and practices complained of herein are in violation of the FLSA and NYLL;

(b)      declaring that the acts and practices complained of herein are willful violations and without a reasonable, good-faith basis within the meaning of 29 U.S.C. § 255(a) and NYLL §§ 198, 663;

(c)      permanently enjoining and restraining the violations alleged herein, pursuant to 29 U.S.C. § 217 and the NYLL;

(d)      awarding Plaintiff all unpaid overtime wages due paid at the applicable New York State minimum wage rate at time-and-a-half, without any tip credit deducted, as a consequence of Defendants' violations of the FLSA and NYLL;

(e)      awarding Plaintiff all unpaid wages for hours worked under 40 at the applicable New York State minimum wage without a tip credit deduction, and which were uncompensated as a consequence of Defendants' violations of the NYLL and FLSA;

(f)      disgorging from Defendants all illegally retained tips that were purportedly used to subsidize the wages of kitchen cooks and credit card processing fees;

(g)      awarding Plaintiff all allowable penalties for Defendants' failure to provide required wage notices in violation of the NYLL;

(h)      awarding Plaintiff all allowable liquidated damages as provided for in 29 U.S.C. § 216(b);

(i)      awarding Plaintiff all allowable liquidated damages as provided for in NYLL §§ 198, 663;

(j)      awarding Plaintiff all allowable pre-judgment interest as provided for by NYLL §§ 198, 663;

(k)      awarding Plaintiff spread of hours pay as provided by N.Y. Comp. Codes, Rules & Regs., tit. 12, § 146-1.6;

   (l)  awarding Plaintiff the costs of this action together with his

reasonable attorney fees, as provided in 29 U.S.C. § 216(b) and NYLL §§ 198, 663;

   (m)  awarding Plaintiff all allowable post-judgment interest as provided

for by 28 U.S.C. § 1961(a); and

   (n)  granting such other and further relief to Plaintiff as this Court

deems appropriate.


Dated: December 18, 2020
   New York, New York

         CARY KANE LLP


         By: /s/*Christopher S. Baluzy*_____

          Christopher S. Baluzy
         1350 Broadway, Suite 2220
         New York, NY 10018
         T: 212-871-0535
         F: 646-599-9575
         cbaluzy@carykane.com
         *Attorneys for Plaintiff Nikolaos Katsaros*